Dan Getman
Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kingston, New York  12401
Tel. (845) 255-9370
Fax (845) 255-8649

Russell G. Wheeler
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
Tel. (845) 876-7500
Fax (845) 876-7501

Attorneys for Plaintiff Ionie Scott

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IONIE SCOTT, on behalf of herself and those similarly situated,<br><br>         Plaintiffs,<br><br>vs.<br><br>GRISWOLD HOME CARE, FMCH, INC., MARIA P. MALAFRONTE, in her individual capacity, CATHY HOWARD, in her individual capacity, all jointly and severally,<br><br>         Defendants. | COLLECTIVE AND<br>CLASS ACTION COMPLAINT<br><br><br>Civil Action No. 19-527 |

Plaintiff Ionie Scott, on behalf of herself and those similarly situated, by and through her attorneys Getman, Sweeney & Dunn, PLLC and Charny & Wheeler P.C. brings this action pursuant to the Fair Labor Standards Act (FLSA) and Title 31, Chapter 558 of the Connecticut General Statute (CGS), on behalf of herself and those similarly situated, to recover unpaid wages

from Griswold Home Care, FMCH, INC., Maria P. Malafronte and Cathy Howard (collectively Defendants) and in support alleges as follows as her Complaint.

## JURISDICTION AND VENUE

1. This Court has Federal question jurisdiction in that this action arises under Federal statute, 29 U.S.C. § 216(b).

2. This Court has supplemental jurisdiction over the State Law claims pursuant to 29 U.S.C. § 1367.

3. Venue is proper in that the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

4. Plaintiff Ionie Scott (herein Plaintiff Scott) is an adult individual residing in Fairfield County, Connecticut who was employed by Defendants as a home health aid from in or about February 2017 until in or about October 2018.

5. At all times relevant herein, Defendant Griswold Home Care (herein Defendant Griswold) was a Pennsylvania-based corporation with a business address of 947 Penn Avenue, Wyomissing, Pennsylvania.

6. At all times relevant herein, Defendant FMCH, INC. (herein Defendant FMCH) was a Connecticut domestic corporation, incorporated on or about May 1, 1991, and having a business and mailing address of 1122 Broadbridge Avenue, Stratford Connecticut 06615.

7. Defendants Griswold and FMCH are collectively referred to herein as "Corporate Defendants."

8. At all times relevant herein, Defendant Maria P. Malafronte (herein Defendant Malafronte) was a resident and domiciliary of Connecticut engaged in the provision of home

health aide services at various locations within the state of Connecticut, upon information and belief managing and profiting from Defendant FMCH.

9.     At all times relevant herein, Defendant Cathy Howard (herein Defendant Howard) was a resident and domiciliary of Connecticut engaged in the provision of home health aide services at various locations within the state of Connecticut, upon information and belief managing and profiting from Defendant FMCH.

10.    Defendants Malafronte and Howard are collectively referred to herein as "Individual Defendants."

11.    Defendant FMCH and the Individual Defendants are collectively referred to herein as "the Connecticut Defendants."

## DEFENDANTS' STATUS AS EMPLOYERS

### DEFENDANT GRISWOLD

12.    Defendant Griswold is the oldest non-medical home care franchise organization in the United States.  It operates through more than one-hundred fifty (150) franchisees in twenty-nine (29) states, including Connecticut.

13.    At all times relevant herein, and as a matter of economic reality, Defendant Griswold was an employer and/or joint employer of Plaintiff and employees similarly situated within the meaning of the FLSA and CGS.  Defendant Griswold employed and/or jointly employed Plaintiffs and other employees similarly situated within the meaning of the FLSA and CGS.

14.    Upon information and belief, at all times relevant herein, Defendant Griswold exercised control over Plaintiff Scott and other employees similarly situated.

15.     At all times relevant herein, Defendant Griswold recruited employees to perform home health services through its franchises, including the Connecticut Defendants, using its web site at www.griswoldhomecare.com.

16.     At all times relevant herein, Defendant Griswold promulgated the standards by which Plaintiff Scott and other similarly situated employees could be hired and retained as employees by the Connecticut Defendants, including by mandating that they undergo and successfully pass "screening for compassion, identity, integrity, and competence" and vowing that "[w]e will not refer a caregiver into your home that we would not welcome into our own home."

17.     At all times relevant herein, Defendant Griswold promoted its franchise opportunities by representing that it would provide franchisors with "4 total weeks of owner training, field support at your grand opening, and an exceptional on-going training platform that includes pointers for hiring the right employees, how to make sales and build a referral base of customers and caregivers, how to market effectively, and much more. We check in on an ongoing basis to help you become established."

18.     Upon information and belief, at all times relevant herein, Defendant Griswold employed its resources and capital in the manner described above to support and further the work performed by Plaintiff and other employees similarly situated.

19.     Upon information and belief, at all times relevant herein, Defendant Griswold provided oversight and training to its franchises as described above to supervise, and through such means did actually supervise, the work of Plaintiff Scott and other employees similarly situated.

20. Upon information and belief, at all times relevant herein, the fees generated by the work performed Plaintiffs and other employees similarly situated was integral to Defendant Griswold's business model.

21. At all times relevant herein Defendant Griswold charged its franchisees a franchise fee of between forty-nine thousand five-hundred dollars ($49,500) to fifty-four thousand five-hundred dollars ($54,500) and a continuing royalty fee of between 3.75% and 4.00%.

22. Upon information and belief, Defendant Griswold had no other source of revenue other than the franchise fees and continuing royalty fees paid by its franchises.

23. At all times relevant herein, Defendant Griswold has constituted an enterprise engaged in commerce, as defined by 29 U.S.C. § 203(s)(1), upon information and belief with a gross annual volume of business done of not less than $500,000 and with employees engaged in commerce, as defined by 29 U.S.C. § 203(b).

24. At all times relevant herein, Defendant Griswold's employees have engaged in commerce by regularly travelling between at least New York, Pennsylvania and Connecticut to provide home care services on behalf of Defendants.

25. At all times relevant herein, employees of Defendant Griswold have regularly used interstate wires when communicating to facilitate the provision of home health care services.

26. At all times relevant herein, Defendant Griswold has performed related activities through unified operations or common control with the common purpose of running a for-profit business that provides home care services.

27. For all times relevant to this Complaint Defendant Griswold has been an employer within the meaning of 29 U.S.C. §203(d) and Connecticut General Statute § 31-58.

## THE CONNECTICUT DEFENDANTS

28. At all times relevant herein, the Connecticut Defendants provided home health care services at various locations within the state of Connecticut through a franchise arrangement with Defendant Griswold.

29. Defendant Howard and her mother Frances Malafronte began operating as a franchisee of Defendant Griswold in 1991 to provide home health care services in Fairfield County, Connecticut.

30. Upon information and belief, Defendant Howard and Frances Malafronte formed Defendant FMCH in May 1991 for the purpose of providing home health care services as a franchisee of Defendant Griswold.

31. Upon information and belief, the corporate name "FMCH" is acronym for "Frances Malafronte [and] Cathy Howard."

32. Upon information and belief, at all times relevant herein, Individual Defendants provided home health care services as a franchise of Defendant Griswold through Defendant FMCH in Fairfield County within the state of Connecticut.

33. Defendants were and are joint employers of Plaintiff, acting indirectly and directly in each other's interests in relation to Plaintiff's employment.

34. At all times relevant herein, Individual Defendants maintained control over all aspects of the day-to-day functions of Defendant FMCH, including: (i) operational control over the operational enterprise, including actively managing, supervising and directing the business operations; (ii) power to establish, and in fact establishment of, the terms of employment of

Plaintiff and others similarly situated; (iii) power to hire and fire; (iv) control over employee work schedules; (v) the ability to determine the rate and method of employee payment; and (vi) maintaining employment records of the employing entity.

35.	At all times relevant herein, Individual Defendants acted directly and indirectly in Defendant FMCH's interests in relation to its employees, including Plaintiff and others similarly situated.

36.	At all times relevant herein, the Coonecticut Defendants have jointly constituted an enterprise engaged in commerce, as defined by 29 U.S.C. § 203(s)(1), upon information and belief with a gross annual volume of business done of not less than $500,000 and with employees engaged in commerce, as defined by 29 U.S.C. § 203(b).

37.	At all times relevant herein, the Connecticut Defendants' employees have engaged in commerce by regularly travelling between at least New York and Connecticut to provide home care services on behalf of Defendants.

38.	At all times relevant herein, employees of the Connecticut Defendants have regularly used interstate wires when communicating to facilitate the provision of home health care services.

39.	At all times relevant herein, the Connecticut Defendants have performed related activities through unified operations or common control with the common purpose of running a for-profit business that provides home care services.

40.	At all times relevant herein, the Connecticut Defendants have been an employer within the meaning of 29 U.S.C. §203(d) and Connecticut General Statute § 31-58.

41.	At all times relevant herein, Defendants have jointly constituted an enterprise engaged in commerce, as defined by 29 U.S.C. § 203(s)(1), upon information and belief with a

gross annual volume of business done of not less than $500,000 and with employees engaged in commerce, as defined by 29 U.S.C. § 203(b).

## FACTS

42.     As joint employers, Defendants provide home health care services to elderly and/or infirm individuals through home health care aides such as Plaintiff.

43.     Defendants serve clients in Connecticut.

44.     Defendants employ individuals as home health care aides within their clients' homes.  The specific work assignments and hours of operation are determined by Defendants.

45.     Defendants assign the home health care aides employed by them to work fixed schedules based upon the needs of Defendants' clients.

46.     Defendants require the home health care employed by them to obtain Defendants' approval in advance of any change to their schedule, including for vacation, personal days or sick days.

47.     Defendants require the home health care aides employed by them to record their hours spent at each client's residence.

48.     Defendants require the home health care aides employed by them to address to Defendants any concerns, complaints, requests or other issues that arise in connection with the provision of services to Defendants' clients; Defendants specifically prohibit the home health care aides employed by them from bringing such matters directly to the attention of Defendants' clients.

49.     Defendants' sole business consists of placing home health care aides in the homes of Defendants' clients.  As such, the home health care aides employed by Defendants are integral to Defendants' business.

50. Defendants do not require that the home health care aides employed by them provide any financial investment in the operation of Defendants' business.

51. Defendants market their service through various forms of advertising, license and insure their home health care aides in the performance of service for Defendants' clients, coordinate the placement of their home health care aides with specific clients, arrange for coverage of services to clients when Defendants' home health care aides request time off and handle all billing and collection for home health care services performed by their home health care aides.

52. During her employment with Defendants, Plaintiff Scott was not entitled to earn any incentive, bonus, commission or profit share other than the compensation paid to her by Defendants as wages for hours worked.

53. Upon information and belief, Defendants have never paid any other individual employed by them as a home health care aid any incentive, bonus, commission or profit share other than the compensation paid to them as wages for hours worked.

54. Upon information and belief, Defendants are compensated by various payors, including Medicaid, Medicare, private insurance companies, and directly by their clients. The payors are billed hourly based on the amount of time Defendants' aides spend within the clients' homes.

DEFENDANTS' FAILURE TO PAY OVERTIME

55. In addition to those services typically provided by home health care aides, such as bathing, grooming and toileting patients, Defendants required Plaintiff and other employees similarly situated to routinely perform general housekeeping duties for clients.

56. Such duties include taking out the garbage for entire household, caring for family members other than the client, preparing and serving food and drinks for the household and its guests, driving other family members and household guests, dusting and cleaning, cleaning common areas and areas of homes not ordinarily used by patients, running miscellaneous errands unrelated to the care of the client, grocery shopping, moving furniture, and even packing to move the household.

57. In their marketing materials, Defendants specifically tout meal planning and preparation, washing dishes, light housekeeping such as vacuuming and dusting, laundry and linens, making/changing the bed, helping with organization, running errands, grocery shopping, travel accompaniment to appointments, accompaniment on trips, pet care and plant care as services that their home health aides could provide.

58. Defendants advised Plaintiff and other employees similarly situated of their expectation that as home health care aides employed by them, they were expected to perform such general household work as additional duties for their clients and their clients' family members.

59. The amount of time Plaintiff Scott spent on such general household work regularly exceeded twenty percent of her working time.

60. The other aides employed by Defendants similarly performed general household work of the character described above for more than twenty percent of their working time for Defendants.

61. Plaintiff was paid on a per day basis at a rate of one hundred fifty-eight dollars ($158) for each 24-hour shift.

62. Plaintiff would also be paid an hourly rate for those assignments that were not a 24-hour shift assignment.

63. Upon information and belief, all home health aides working for Defendants who worked 24-hour shifts were paid a per shift rate of pay and if working an hourly assignment would be paid an hourly rate.

64. Plaintiff regularly worked in excess of 40 hours per week.

65. Defendants typically scheduled Plaintiff to work seven days a week. When working a 24-hour shift Plaintiff worked in excess of thirteen hours on such days. As a result, Plaintiff consistently worked well over forty (hours) in a work week.

66. At all times that she worked for Defendants, Plaintiff maintained -- separate and apart from the households of the clients to which she was assigned by Defendants -- her own residence where she received mail, kept her possessions and spent time when not working for Defendants.

67. Despite regularly working in excess of forty (40) hours per week, and with exception of certain holidays designated solely at the discretion of Defendants, Plaintiff and other employees similarly situated were paid only straight time pay by way of twenty-four (24) hour shift pay and/or hourly pay.

68. Defendants failed and refused to pay any overtime to any of the home health care aides employed by them.

69. Upon information and belief there are at least four hundred (400) home health care aides employed by Defendants who were never paid overtime compensation for hours worked in excess of forty (40) in a week.

70. Throughout her employment with Defendants Plaintiff was never provided with information, either written or verbal, regarding her eligibility for overtime pay.

71. Defendants have failed to comply with FLSA workplace posting requirements. Defendants' failure in this regard constitutes an attempt to conceal its employees' rights and discourage them from taking steps to enforce the law as it applies to their circumstances.

## DEFENDANTS' UNLAWFUL WAGE DEDUCTIONS

72. As part of the compensation paid to them, Defendants represented that Plaintiff Scott and other employees similarly situated would be provided a meal or meals valued at ten dollars ($10) per day.

73. Defendants' clients failed to provide Plaintiff Scott or other employees similarly situated with any meal during the work day and/or failed to provide such a meal or meals valued at ten dollars ($10) per day.

74. Plaintiff Scott and other employees similarly situated regularly advised Defendants that Defendants' clients failed to provide them with any meal during the work day and/or failed to provide such a meal or meals valued at ten dollars ($10) per day.

75. Notwithstanding that Plaintiff Scott and other employees similarly situated were not provided meals and/or were not provided meals valued at least ten dollars ($10) per day and notwithstanding the advisements by Plaintiff and other employees similarly situated that they had not been provided such meals, Defendants continued to deduct from the wages of Plaintiff and other employees similarly situated at a rate of ten dollars ($10) per day for the provision of such meals.

76. Upon information and belief there are at least four hundred (400) home health care aides employed by Defendants from whose wages Defendants deducted for the provision of meals.

## COLLECTIVE ACTION ALLEGATIONS

77. For purposes of the FLSA collective action, the collective is defined as: All home health care aides employed by Defendants on and after three years from the date this action is commenced who were not paid overtime for hours worked over forty in a workweek.

78. Similarly situated former and current employees are readily identifiable through Defendants' records. These similarly situated employees can be located and should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. §216(b).

## CLASS ACTION ALLEGATIONS

79. Plaintiff seeks certification under Rule 23 of the Federal Rules of Civil Procedure of a class of employees who were and are employed as home health aides by Defendants from April 7, 2011 through the present day and who were not properly paid overtime pay and/or had unlawful deductions taken from their wages pursuant to the CGS for the period March 12, 2017.

80. Common questions of fact exist as to all of the members of the proposed class and predominate over the questions affecting only individual members -- namely, whether Defendants did not pay overtime wages to and/or made unlawful wage deductions from their employees who were and are home health care aides.

81. The common questions of law include whether Defendants are liable to the individual members under applicable State law.

82. Plaintiff's claims are typical of the claims of the members of the proposed class, as Plaintiff and the other members' sustained damages arising out of the same wrongful conduct of Defendants in failing to pay overtime wages and making unlawful wage deductions.

83. Plaintiff is represented by [local counsel] and Charny & Wheeler P.C. which has the resources, expertise and experience necessary to prosecute this class action and their attorneys do not have knowledge of any conflicts among the potential members of the class or their respective counsel.

84. A class action is superior to other available methods for the fair and efficient adjudication of the controversy raised in this lawsuit because:  (1) the prosecution of separate actions would be inefficient and wasteful of judicial resources; (2) the members of the proposed class are likely located throughout the Northeast Region and are not likely to be able to vindicate and enforce their claims unless this action is maintained as a class action; (3) the issues raised can be more fairly and efficiently resolved in the context of a single action rather than piecemeal litigation in separate actions; (4) the resolution of litigation in a single forum will avoid the risk of confusion and possible inconsistent determinations; (5) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against the defendants which would establish incompatible standards of conduct; (6) the defendants have acted on grounds applicable to all class members, making final declaratory relief on behalf of all members necessary and appropriate; and (7) questions of law and fact common to members of the class on issues of liability predominate over any questions, such as those of individual damages, that will affect individual class members.

85. Plaintiff reserves the right to fashion such other classes and/or sub-classes to properly protect the rights of putative class members.

FIRST CAUSE OF ACTION
<u>FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA</u>
Collective Action

86. Plaintiff repeats and re-alleges the preceding allegations.

87. Defendants employed Plaintiff and those similarly situated for workweeks longer than 40 hours and willfully failed to compensate Plaintiff and other employees similarly situated for the time worked in excess of 40 hours per week, at a rate of at least one and one-half times the regular hourly rate, in violation of the requirements of the FLSA.

88. As a consequence of the willful underpayment of wages, Plaintiff and those employees similarly situated have incurred damages and Defendants are indebted to them in the amount of the unpaid overtime compensation, together with interest, liquidated damages and attorney's fees and costs, in an amount to be determined at trial.

SECOND CAUSE OF ACTION
<u>FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF STATE LAW</u>
Class Action

89. Plaintiff repeats and re-alleges the preceding allegations.

90. Defendants employed Plaintiff and those similarly situated for workweeks longer than 40 hours and willfully failed to compensate Plaintiff for the time worked in excess of 40 hours per week, at a rate of at least one and one-half times the regular hourly rate, in violation of the requirements of the CGS.

91. As a consequence of the willful underpayment of wages alleged above, the plaintiff, and those similarly situated, have incurred damages and Defendants are indebted to them in the amount of the unpaid overtime compensations pursuant to State law together with interest, liquidated damages and attorney's fees and costs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## <u>UNLAWFUL DEDUCTION OF WAGES IN VIOLATION OF CGS</u>
## Class Action

92. Plaintiff repeats and realleges the preceding allegations.

93. During the term of her employment with Defendants, Defendants deducted a meals credit from the wages of Plaintiff and other employees similarly situated.

94. Defendants represented that the basis for such deductions was the existence of an arrangement by which their client would provide meals to Plaintiff and others similarly situated at a value equivalent to the amount of such deduction.

95. By way of their complaints, Defendants had actual and constructive notice that Plaintiffs and other employees similarly situated did not receive the meals for which the meals credit were intended to be deducted.

96. Notwithstanding such notice, Defendants deducted the meal credit from the wages of Plaintiff and other employees similarly situated.

97. Defendants' deduction of the meals credit from the wages of Plaintiff and other employees similarly situated constitutes an unlawful deduction within the meaning of CGS.

## <u>REQUEST FOR RELIEF</u>

98. Plaintiff, on behalf of herself and the FLSA Collective Class, and the Class under State Law requests the following relief:

(i) Certifying this cause as a collective action in accordance with 26 U.S.C. § 216(b) with respect to the FLSA claims;

(ii) Certifying this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), as a class action as to those claims brought pursuant to State Law, including as provided by Conn. Practice Book Sec. 9-9;

(iii) Judgment against Defendants for willful violation of the FLSA and State Law;

(iv) Liquidated damages as provided for by the FLSA and State Law;

(v) Pre- and post-judgment interest;

(vi) Any and all further relief available under the FLSA and State Law.

(vii) All costs and attorneys' fees incurred prosecuting these claims; and

(viii) Such other and further relief as the Court deems just and equitable.

Dated: Kingston, New York
April 9, 2019

       s/ Dan Getman
Dan Getman
Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kingston, New York  12401
Tel. (845) 255-9370
Fax (845) 255-8649
dgetman@getmansweeney.com

Russell G. Wheeler
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
(845) 876-7500
rwheeler@charnywheeler.com

Attorneys for Plaintiff Ionie Scott