Dan Getman
Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kingston, New York  12401
Tel. (845) 255-9370
Fax (845) 255-8649

Russell G. Wheeler
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
Tel. (845) 876-7500
Fax (845) 876-7501

Attorneys for Plaintiff Ionie Scott

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IONIE SCOTT, on behalf of herself and those similarly situated,<br><br>                              Plaintiffs,<br><br>      vs.<br><br>GRISWOLD HOME CARE, FMCH, INC., MARIA P. MALAFRONTE, in her individual capacity, CATHY HOWARD, in her individual capacity, all jointly and severally,<br><br>                              Defendants. | Civil Action No. 3:19-CV-00527(SRU) |

PLAINTIFF'S MEMORANDUM OF LAW IN REPLY TO SUPPLEMENT TO
MOTION TO DISMISS FILED BY DEFENDANTS FMCH, INC. AND CATHY HOWARD

Dated:  Rhinebeck, NY
             March 13, 2020

Russell G. Wheeler
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
rwheeler@charnywheeler.com

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

A.  Plaintiff's Claims are Not So Closely Intertwined
    with the Agreement that Defendants May Invoke
    Principles of Estoppel to Enforce its Arbitration Provision...................................................1

B.  Defendants May Not Enforce the Arbitration
    Provision Based Upon the Text of the Agreement ................................................................4

C.  Defendants' Supplement Creates at Most an Issue of Fact ...................................................6

CONCLUSION..................................................................................................................................7

TABLE OF AUTHORITIES

Bensadoun v. Jobe-Riat, 316 F.3d 171 (2d Cir. 2003) .................................................................. 6

Burger v. NIA Group, LLC, 2009 WL 10689079 (D. Conn. 2009) .............................................. 2

Choctaw Generation Ltd. P'ship v. American Home Assur. Co.,
271F.3d 403 (2d Cir. 2001)............................................................................................................ 3

JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 178 (2d Cir. 2004)............................... 2, 3, 4

MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942 (11th Cir. 1999) .............................................. 4

PRELIMINARY STATEMENT

Plaintiff Ionie Scott submits this Memorandum of Law in Reply to the Supplement (ECF Doc. No. 49) to the Motion to Dismiss (ECF Doc. No. 15) by defendants FMCH, Inc. (herein "FMCH") and Cathy Howard (herein "Howard"). Based upon the Declaration of Cathy Howard dated January 31, 2020, FMCH and Howard (collectively herein "Defendants") assert that the Employment Agreement (herein "the Agreement") submitted as Exhibit 1 to their Motion to Dismiss (ECF Doc. No. 15-2), was entered into between Plaintiff and non-party CKJH, Inc. (herein "CKJH"), and that as non-signatories to the Agreement, Defendants nevertheless may enforce its provision purporting to require arbitration of certain disputes, claims or controversies by Plaintiff.

Plaintiff's reply to these arguments are set forth below. Initially, however, Plaintiff submits that her arguments in opposition to Defendants' Motion based upon the Agreement's fatal uncertainty, (Pl. Opp. Mot. Dismiss [ECF Doc. No. 21], pp. 7-11); its incomplete opt-out clause, (id. at 12-13); the expiration of its terms, (id. at 14-15); invalidity, (id. at 15-17); scope of the Agreement, (id. at 17-21); and unconscionability, (id. at 21-24) are unaffected by anything in Defendants' Supplement and respectfully refers the Court to same as an additional basis upon which to deny Defendant's underlying Motion.

    A.    <u>Plaintiff's Claims are Not So Closely Intertwined with the Agreement that Defendants May Invoke Principles of Estoppel to Enforce its Arbitration Provision</u>

Defendants are non-signatories to the Agreement, but nevertheless seek to enforce its arbitration provision under "principles of estoppel" because, they contend, Plaintiff's claims are "closely intertwined" with the Agreement containing the arbitration clause. (Supp., pp. 2 - 3.) While the Second Circuit has recognized the application of estoppel in this context, the analysis is substantially more nuanced than that portrayed by Defendants. "[W]e have cautioned that this

1

estoppel inquiry is fact-specific and have had no occasion to specify the minimum quantum of 'intertwined-ness' required to support a finding of estoppel." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 178 (2d Cir. 2004) (citations omitted).

The granular nature of the analysis is illustrated by the holding in Burger v. NIA Group, LLC, 2009 WL 10689079 (D. Conn. 2009), the sole authority cited by Defendants for their argument.  The plaintiff in Burger brought claims against both his employer and its majority share owner alleging that he was improperly removed from servicing a customer account. Id., at *1. The majority share owner moved to compel arbitration based upon an employment agreement entered into between the plaintiff and the employer, but to which it was not a signatory.  Id.  The court found the claims against the non-signatory arbitrable as "closely-intertwined" with the employment agreement based upon two factors:  First, plaintiff's claims all related to his right to commissions under the employment agreement and could not be resolved without reference to it; second, the plaintiff alleged that the non-signatory was responsible for the decision to remove him from the account.  Id., at *6.

Here, there exists no such close relationship between Plaintiff's claims and the subject matter of the Agreement.  Defendants assert that the Agreement purports to govern an arrangement by which Plaintiff, as an independent contractor, would be referred clients by CKJH.  (See Supp., Ex. A ¶¶ 2, 4.)  Plaintiff's claims, however, do not involve such a referral arrangement.  Rather, Plaintiff alleges that Defendants were her joint employers, determined her specific work assignments and hours of operation, assigned her to a fixed work schedule, required her approval in advance of any change to their schedule and required her to address to defendants any concerns, complaint or other issues concerning the provision of services. (Compl. [ECF Doc. No. 1] ¶¶ 33, 44, 46.)   In her Declaration in opposition to Defendants'

2

Motion, Plaintiff specifically rejects the suggestion that her claims arose pursuant to the type of referral arrangement contemplated the Agreement.  (Pl. Opp. Mot. Dismiss, Ex. 1 ¶ 6 ("I have not received referrals under the Caregiver Agreement or performed Services according to that arrangement, and no clients have paid me directly.").)

The absence of sufficiently 'close intertwined-ness' is further shown by the Second Circuit caselaw upon which the <u>Burger</u> holding chiefly relies.  In <u>JLM Indus.</u>, <u>supra</u>, the Court of Appeals concluded that a close relationship sufficient to compel arbitration exited where it was the plaintiff's entry into the relevant agreements, "contain[ing] allegedly inflated price terms," that gave rise to the claimed injury.  387 F.3d at 178.  Here, as already noted, Plaintiff alleges injury based upon the existence of an employment relationship with Defendants and not upon the type of referral arrangement contemplated by the Agreement.  <u>See also</u>, <u>Choctaw Generation Ltd. P'ship v. American Home Assur. Co.</u>, 271F.3d 403, 406 (2d Cir. 2001) (compelling arbitration where plaintiff and non-signatory to arbitration agreement were parties to separate contract incorporating by reference arbitration agreement and claims against non-signatory concerned duty to replenish letter of credit maintained under agreement containing arbitration provision).

Defendants' attempt to manufacture the existence of such a relationship should be rejected.  Contrary to their assertion, (Supp., p. 2), Plaintiff has not alleged that Defendants' failure to pay overtime or their unauthorized deductions from her wages was the "result of her alleged misclassification as independent contractor providing service as a home health aide," (<u>see generally</u> Compl.)  In fact, Plaintiff explicitly pleads that Defendants' overtime violations were "willful," (<u>id.</u> ¶¶ 88, 91) as opposed to the result of a misclassification, and alleges that they took deductions from her wages despite "actual and constructive notice" that such deductions were without authorization, (<u>id.</u> ¶¶ 95, 96).

3

Further, Plaintiff's claims here are not "linked textually" to the Agreement, id. at 407; do not make reference to or presume the existence of the Agreement, JLM Indus., Inc., 387 F.3d at 178, citing MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999); nor do they treat Defendants as if they were signatories to the Agreement, id., citing Astra Oil, Inc. v. Rover Nav. Ltd., 344 F.3d 276, 280 (2d Cir. 2003).  While Defendants attempt to portray the Complaint's joint employer and class action allegations as intertwining Defendants with CKJH, (Supp., pp. 2-3), they concede that CKJH, the contracting entity to the arbitration provision "is not a party to this action," (id. at 2).  And while Howard is a defendant to this action, it is in her capacity as a joint employer of Plaintiff, controlling FMCH and acting in its interests as to Plaintiff's employment, that she is so named.  (See Compl. ¶¶ 34, 35.)  Plaintiff asserts no claim that can plausibly be said to treat her, in her capacity as a purported owner of CKJH, as if she "were interchangeable" with FMCH or individually as Plaintiff's joint employer through her efforts on behalf of FMCH's interests.  See JLM Indus., Inc., 387 F.3d at 178, quoting Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 97-98 (2d Cir. 1999).

For these reasons, it is respectfully submitted that Defendant's estoppel argument fails.

B.  **Defendants May Not Enforce the Arbitration Provision Based Upon the Text of the Agreement**

Defendants also assert a right under the Agreement to invoke arbitration by virtue of FMCH's status as an "entity doing business as Griswold Home Care."  (Supp. [ECF Doc. No. 49], p. 3.)  They rely on language in the arbitration clause providing for arbitration of "[a]ny and all disputes, claims or controversies by and between [Scott], on the one hand, and Griswold [sic][1]

---

[1] In the portion of the Agreement cited by Defendants, the name Griswold appears in all capitals ("GRISWOLD"). (See Supp., Attach. A to Ex. A.)

4

. . . on the other hand." (Id., citing Caregiver Agreement, Attach. A to Exh. A (alterations in original). "Because both FMCH and CKJH were doing business as Griswold Home Care," Defendants claim, "both FMCH and CKJH are entitled by the terms of the Caregiver Agreement to enforce it." (Id.)

This argument is belied by the text of the Agreement itself, which defines "GRISWOLD" as "the independently owned and operated franchise entity _____ licensed to do business as GRISWOLD HOME CARE, A Referral Service." (Supp., Attach. A to Ex. A.) It is this entity, connoted by the identifier "GRISWOLD," that is the subject of the Agreement's arbitration clause:

> Any and all disputes, claims or controversies arising out of or relating to this Agreement, Your Services under this Agreement and any and all other disputes, claims or controversies by or between You, on the one hand, and GRISWOLD, its franchisor, and their respective Clients, customers, and vendors (collectively, the "GRISWOLD PARTIES"), on the other hand, shall be resolved exclusively through final and binding arbitration(and not by way of a court or jury trial) as follows. . . .

(Supp., Attach. A to Ex. A § 8.) Defendants' argument asks the Court to ignore the plain language of the Agreement to expand its definition of "GRISWOLD" to encompass FMCH simply because it shares a fictious operating name with CKJH. Using Defendants' logic, any entity doing business as Griswold Home Care would be included within the arbitration agreement. Such an expansive reading is contradicted by the arbitration clause itself, which clearly contemplates "GRISWOLD" to constitute a single entity. (See id. (". . . between You, on the one hand, and GRISWOLD, its franchisor, and their respective Clients, customers, and vendors . . . on the other hand . . . . ") (emphasis added).)

5

Lastly, Defendants' argument is wholly contradicted by the substance of the Howard Declaration. Therein, Howard affirms CKJH was "the contracting entity which should have been listed in the blank space" in the Agreement. (Supp., Ex. A ¶ 5.) The Agreement defines that entity -- as per Howard, CKJH -- as "GRISWOLD," which it also specifies is the party covered by the arbitration agreement. (See Supp., Attach. A to Ex. A, pmbl., § 8.) The Agreement also describes the contracting entity defined as "GRISWOLD" as "A Referral Service." In her Declaration, Howard portrays CKJH as having provided "referrals" to Plaintiff, as distinguished from FMCH which, she avers "is not a referral service . . . ." (Supp., Ex. A ¶¶ 2, 3.)

    C.    <u>Defendants' Supplement Creates at Most an Issue of Fact</u>

Without regard to the legal infirmities in Defendants' estoppel argument, the Howard Declaration and related assertions raise at most an issue of fact as to Plaintiff's employment relationship to Defendants. (<u>Compare</u>, e.g., Supp., Ex. A ¶ 6 ("Ms. Scott did not ever provide services through FMCH, Inc. . . . . FMCH, Inc. . . . had no relationship with Ms. Scott, and did not employ her, use her services, or pay her.") <u>with</u> Pl. Opp. Mot. Dismiss, Ex. 1 ¶ 6 ("Since at least the beginning of 2017, I have been employed directly by Defendants, I have not received referrals under the Caregiver Agreement or performed Services according to that arrangements, and no clients have paid me directly. Rather, I was paid by Defendants.").) The existence of such issues precludes the determination of Defendants' pending Motion. <u>Bensadoun v. Jobe-Riat</u>, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration brought under the Federal Arbitration Act, the court applies a standard similar to that applicable for a motion for summary judgment. If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary.") (citations omitted).

While Defendants' current averments may appropriately belong to the substantive merits of Plaintiff's claims (e.g., whether Plaintiff was employed by Defendants or engaged by some other entity), they certainly are not determinative of Defendants' underlying Motion. As such, they should be disregarded.

## CONCLUSION

For all of the foregoing reasons, and for those set forth in Plaintiff's Opposition to Defendants' underlying Motion, it is respectfully submitted that the Motion fails as a matter of law and should be denied.

Dated: Rhinebeck, New York
       March 13, 2020

/s/ Russell Wheeler
Russell G. Wheeler
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
(845) 876-7500
rwheeler@charnywheeler.com

Dan Getman
Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kingston, New York  12401
Tel. (845) 255-9370
Fax (845) 255-8649

Attorneys for Plaintiff Ionie Scott

CERTIFICATE OF SERVICE

      I hereby certify that on March 13, 2020, I caused the foregoing Reply Memorandum of Law to be filed through the ECF system for the United States District Court for the District of Connecticut.  As such, it is available for viewing and downloading through that Court's ECF system, and will be sent electronically to the registered participants identified by the Notice of Electronic Filings, including:

>Lori B. Alexander
>Littler Mendelson P.C.
>One Century Tower
>265 Church Street, Ste 300
>New Haven, CT  06510

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on March 13, 2020 in Rhinebeck, New York.

>/s Russell G. Wheeler
>Russell G. Wheeler